ROBERT L. FRONK & others[1] *vs.* JOHN P. FOWLER & others.[2]

No. 07-P-422.

Middlesex. January 10, 2008. - April 4, 2008.

Present: BERRY, KAFKER, & MILLS, JJ.

*Partnership,* General partner, Agreement, Fiduciary duty. *Corporation,* Corporate opportunity. *Contract,* Performance and breach.

In a civil action brought in Superior Court by the limited partners of a limited partnership (a commercial real estate venture) against the general partners claiming, inter alia, breach of the partnership agreement and the general partners' fiduciary duties by misappropriation of partnership opportunities, based on the general partners' acquisition of large real estate parcels neighboring the building project for which the limited partnership was formed, without involving the limited partners, the judge properly entered judgment for the defendants, where the partnership agreement specifically authorized the general partners' actions. [507-511]

In a civil action brought in Superior Court by the limited partners of a limited partnership against the general partners, the judge correctly concluded that the compensation paid to the general partners for services authorized by the partnership agreement was fair and reasonable and that no harm resulted from the general partners' failure to give the limited partners advance notice of the payments; further, the judge did not improperly place the burden of proving the unreasonableness of the compensation on the limited partners. [511-512]

CIVIL ACTION commenced in the Superior Court Department on March 21, 2002.

The case was heard by *Nonnie S. Burnes,* J.

*Robert S. Wolfe* (*Lawrence G. Green* with him) for the plaintiffs.

*Stephen H. Oleskey* (*Timothy R. Shannon* with him) for the defendants.

*Jo Ann Shotwell Kaplan & Martin J. Newhouse,* for New England Legal Foundation, amicus curiae, submitted a brief.

---

[1]Jack Saltiel and Maila L. Walter.

[2]Jeffrey A. Millman, Robert Lee Wolff, Jr., Maple Leaf Cambridge Corporation, and The Cambridge Company, Inc.

KAFKER, J. The plaintiffs, limited partners in a commercial real estate venture, appeal from a judgment for the general partners following a jury-waived trial in Superior Court on claims for breach of contract and fiduciary duty and for misappropriation of partnership opportunities. The issues on appeal concern various transactions by the general partners, including their purchase, without the involvement of the limited partners, of large real estate parcels neighboring the building project for which the limited partnership was formed. The plaintiffs also contest fees charged for services provided by the general partners to the limited partnership. As the limited partnership agreement expressly allowed the general partners' actions, we affirm the judgment rejecting all the limited partners' claims.

We recount the facts, here and in our discussion, from the judge's June 6, 2006, findings of fact, conclusions of law, and order, which were fully supported in the record.[3] In 1984, the defendants, Robert L. Wolff, Jr., John P. Fowler, and Jeffrey A. Millman, formed The Cambridge Company, Inc. (TCC), to acquire, renovate, and operate commercial real estate. Wolff was a real estate developer; Fowler was a mortgage broker; and Millman was an architect and project manager. TCC's first project was a building at 160 Concord Avenue in Cambridge. The defendants formed a separate partnership specifically for that project. TCC has since developed approximately eleven properties, all through separate entities.

In 1985, TCC undertook its second project, the acquisition and development of the Maple Leaf Building, a six-story hot dog factory at 23 East Street in Cambridge. The plaintiffs, Edward S. Walter,[4] Jack Saltiel, and Robert Fronk, became acquainted with Wolff when they sought to lease three floors of the building for their company, Compumart Corporation. During the lease negotiations, the parties decided that the plaintiffs would participate in the limited partnership that would purchase 23 East Street. The plaintiffs' contribution to the limited partner-

---

[3]We augment the facts, as necessary for our discussion, from the documentary evidence in the record.

[4]Edward S. Walter is not a named plaintiff in this action, as in 1998, he transferred his limited partnership interest to his wife, the plaintiff Maila Walter. As did the judge below, we refer to Edward S. Walter as a plaintiff for events occurring prior to the 1994 transfer of his limited partnership interest.

ship was the lease of the three floors for a term of fifteen years by Compumart, and a $500,000 letter of credit, to be used as security only for any cost overruns during the development of the project.[5]

The parties executed the Maple East Associates Limited Partnership Agreement (partnership agreement) on May 7, 1985. Under the partnership agreement, the three plaintiffs were limited partners, collectively holding a forty percent interest; the three defendants were general partners, collectively holding a sixty percent interest. All three plaintiffs were experienced and sophisticated businesspeople, represented by counsel.

Section 4 of the partnership agreement set forth the partnership's purpose:

> "The purpose of the partnership shall be (i) to acquire approximately 32,268 square feet of land and the six story concrete building thereon located at 23 East Street, Cambridge, Massachusetts (the 'Property'); (ii) to renovate such building in such manner as the General Partners shall determine (the 'Project'); (iii) to own, operate and manage the Project; and (iv) to lease, sell, acquire or otherwise deal with the Project and other real estate in such manner as the General Partner shall determine."

Section 5 provided, in relevant part:

> "In furtherance of its purpose, but subject to all other provisions of this Agreement, the partnership is authorized to:
>
> " . . .
>
> "5.2 acquire by purchase, lease or otherwise any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purpose of the partnership;
>
> "5.3 own, construct, operate, maintain, finance, improve, sell, convey, assign, mortgage or lease any real estate and any personal property necessary, convenient or incidental to the accomplishment of the purposes of the partnership."

---

[5] The judge found that the letter of credit was never drawn down.

Section 13.2 provided, in relevant part:

> "It is expressly understood that a General Partner may engage in any other business or investment, including the ownership of or investment in real estate and the operation and management of real estate, and neither the partnership nor any of the partners thereof shall have any rights in and to said businesses or investments, or the income or profits derived therefrom."

The judge found that, over the ensuing years, the general partners successfully managed 23 East Street through numerous financial crises, including, in December, 1986, the bankruptcy of Compumart and its departure from the building after less than one year of its fifteen-year lease. The general partners performed many services for the limited partnership without compensation, drawing on their respective skills and experience. For example, from 1999 to 2002, Wolff and Millman devoted 1,100 hours to permitting activities. The partnership agreement also authorized the general partners to pay entities owned by or related to them for performance of services. With respect to those related-party transactions, the partnership agreement provided, in § 12.5:

> "The General Partners shall not enter into any contract, agreement, lease or other arrangement for the furnishing to or by the partnership of goods, [or] services . . . for compensation with any party or entity related to or affili-ated with any partner . . . unless such contract . . . is on terms and conditions which are not materially less favor-able to the partnership than the terms and conditions which would be available from unrelated parties. At least five (5) business days prior to entering into such contract, lease or other agreement, the General Partners shall send a copy of such document to the Limited Partners."

The general partners paid themselves or their related entities fees for negotiating a lease, fees for locating and negotiating financing, a sales commission for the sale of the property in 2002, and reimbursements for costs incurred in permitting and finalizing that sale. The judge found that payments to related entities were in keeping with market rates, though she also found that the defendants failed to provide the plaintiffs with copies of

written contracts in advance, as § 12.5 of the partnership agreement required.[6] She further found that the failure to provide advance copies of written contracts caused the plaintiffs no financial harm.

In 1994, the defendants created a separate entity, Maple Research Park Limited Partnership, to acquire and operate property at 9 East Street, which consisted of two warehouse buildings adjacent to 23 East Street. The defendants neither disclosed the purchase nor invited the plaintiffs to take part in the investment. In 1997, the defendants created another entity, WS Lexington Street Limited Partnership, to purchase 1 East Street, a warehouse also located nearby. Again, the plaintiffs were not informed and were not invited to participate.[7]

In 1998 and 1999, the defendants negotiated the sale of 23 East Street, along with 1 and 9 East Street, to Charles E. Smith Residential Realty, L.P. (Smith), a large, publicly-owned residential real estate investment trust. Smith was not interested in purchasing 23 East Street, which was not a commercially attractive property for Smith's development plans, but the defendants insisted that the purchase include 23 East Street. Smith eventually purchased all three parcels, with the proceeds for 23 East Street amounting to $7,279,210.[8] The judge found the sale price for 23 East Street was "extremely favorable to the [p]artnership." She also determined that since the plaintiffs withdrew their expert testimony, they "had no evidence that the method of valuation, nor the valuation itself, of 23 East Street was in any way inadequate or improper." She also credited the defendants' testimony as to valuation and found it to be expert.

---

[6]The judge noted that only one related-party transaction actually involved a written contract, that being for the sales commission paid to Fowler's firm, Holliday, Fenoglio & Fowler, upon the sale of 23 East Street.

[7]Meanwhile, in 1996, the general partners arranged for mortgage refinancing that saved the limited partnership approximately $1.5 million. The lender, Merrill Lynch Mortgage Capital, required that a corporate entity act as the general partner; defendant Maple Leaf Cambridge Corporation replaced the three individual defendants as general partner at that point. The purpose of the limited partnership was to "own, hold and operate a certain parcel of real property, together with all improvements located thereon, at 23 East Street."

[8]Twenty-three East Street represented twelve percent of the total area of 1, 9, and 23 East Street combined. The proceeds for 1 East Street were $6,468,940, and for 9 East Street, $11,401,060.

All told, the judge found that over the course of the limited partnership, each of the plaintiffs, having invested no money and having reneged on their fifteen-year lease obligation, nevertheless received $153,000 in cash distributions, and $307,200 in sales proceeds.[9]

The plaintiffs filed their first amended complaint against the defendants alleging breach of contract, breach of fiduciary duty, fraud, and misrepresentation and misappropriation of business opportunities. Prior to trial, the judge ruled that 1 and 9 East Street were not partnership opportunities, as the limited partnership had as its sole purpose the acquisition, renovation, and operation of 23 East Street. The case was tried on the remaining claims involving breach of the partnership agreement, the related-party transactions, and the valuation of 23 East Street at the time of sale. The judge, in a thoughtful and comprehensive decision, found for the defendants on all counts, and the plaintiffs filed this appeal.

1. *Corporate opportunity.* The first issue presented is whether the defendants' acquisition of the neighboring properties at 1 and 9 East Street, without involving the limited partners of the Maple East Associates Limited Partnership, constituted a misappropriation of the partnership's opportunities. The plaintiffs argue that the general partners' purchase of the neighboring parcels violated both the partnership agreement and the general partners' fiduciary duties. We conclude that there is no merit to either claim because the partnership agreement expressly authorized the general partners' actions, and where the partnership agreement expressly addressed the action, "the obligations of the parties are determined by reference to contract law, and not by the fiduciary principles that would otherwise govern." *Chokel* v. *Genzyme Corp.*, 449 Mass. 272, 278 (2007). See *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 408 (1995) ("questions of good faith and loyalty with respect to rights on termination or stock purchase do not arise when all the stockholders in advance enter into agreements" concerning those issues); *Sonet* v. *Timber Co. L.P.*, 722 A.2d 319, 322 (Del. Ch. 1998) ("principles of contract

---

[9]The plaintiffs received their compensation for the sale in real estate investment trust units.

preempt fiduciary principles where the parties to a limited partnership have made their intentions to do so plain").

The essential and express purpose of the limited partnership agreement was the acquisition, development, and management of 23 East Street. As the trial judge found, the partnership agreement was "a standard type of investment vehicle for investing in a particular commercial real estate property or project." See generally Geiger & Allen, Fool with a Pen: The Use of Single Purpose Entities in Real Estate Loans Has Raised New Issues for Lenders and Guarantors Alike, 28 L.A. Law. 35, 38 (Jan. 2006); Hall, Use of Limited Partnership to Invest in Depreciable Realty, 21 Mercer L. Rev. 481 (1970); Kane, Borrowers' Hot Buttons, Commercial Real Estate Financing 456 PLI/Real Estate 647, 654 (2000). Section 13.2 of the partnership agreement also expressly reserved the right of the general partners, who were real estate developers, to pursue other real estate businesses or investments and further provided that "neither the partnership nor any of the partners thereof shall have any rights in and to said businesses or investments, or the income or profits derived therefrom."

These provisions complemented one another, defining a single purpose for the limited partnership and a narrow restriction on other real estate activities by the general partners. They also expressly authorized the general partners to engage in the other real estate ventures undertaken here without involving the limited partners. The investors were all sophisticated businesspeople and represented by able counsel. "[W]here sophisticated parties choose to embody their agreement in a carefully crafted document, they are entitled to and should be held to the language they chose." *Anderson St. Assocs.* v. *Boston*, 442 Mass. 812, 819 (2004).

Even if we were to interpret the partnership agreement as not specifically authorizing the general partners' purchase of the adjacent properties, and therefore only shaping rather than eclipsing ordinary fiduciary duties regarding partnership opportunities, we would come to the same conclusion. "Normally, a corporate opportunity is thought of as a business or investment opportunity within the sphere of, or somehow related to, the corporation's own activities." *Haseotes* v. *Cumberland Farms, Inc.*, 284 F.3d 216, 228 (1st Cir. 2002), citing *Durfee* v. *Durfee*

& *Canning, Inc.*, 323 Mass. 187 (1948). See *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. at 408 ("stockholders in a close corporation owe one another the same fiduciary duty in the operation of the corporation that partners owe to one another"); *Reeve* v. *Folly Hill Ltd. Partnership*, 36 Mass. App. Ct. 90, 95-96 (1994), quoting from *Partnership Equities, Inc.* v. *Marten*, 15 Mass. App. Ct. 42, 48 (1982) (recognizing "affinity of purpose between the limited partnership and the business corporation").

In stark contrast to the cases upon which the plaintiffs rely, this limited partnership was not a general purpose enterprise that encompassed a wide range of business activities and pursuits.[10] The "sphere" of activity of the limited partnership was quite limited here. The venture was controlled by a partnership agreement that set forth the particular purpose of the limited partnership, that being the acquisition, development, and management of 23 East Street, and thus defined the scope of partnership opportunities as those directly related to the acquisition, development, and management of 23 East Street. And significantly, where the partnership agreement expressly permitted the general partners to acquire other real estate for themselves without offering the limited partners the opportunity to participate, the boundaries of what constituted partnership opportunities were tightly circumscribed around the project itself.

The plaintiffs premise their own contractual and fiduciary duty arguments on isolated provisions in the agreement that "authorized" the general partners to "acquire . . . any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purposes of the partnership." See, e.g., partnership agreement § 5.2. The plaintiffs claim that these provisions anticipated that additional opportunities to acquire real estate might become available and that the general partners were directed by the partnership agreement to pursue such partnership opportunities.

We interpret these provisions much more narrowly. They simply authorized the purchase of property deemed necessary, convenient, or incidental to the development of the 23 East Street project

---

[10]The plaintiffs rely especially on *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 529-530 (1997), which involved a number of general purpose companies.

contemplated in the partnership agreement. See *Starr* v. *Fordham*, 420 Mass. 178, 190 (1995), quoting from *Commissioner of Corps. & Taxn.* v. *Chilton Club*, 318 Mass. 285, 288 (1945) ("the scope of a party's obligation cannot 'be delineated by isolating words and interpreting them as though they stood alone' " ); *Kingstown Corp.* v. *Black Cat Cranberry Corp.*, 65 Mass. App. Ct. 154, 158 (2005), quoting from *Ucello* v. *Cosentino*, 354 Mass. 48, 51 (1968) ("parties' intent 'must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part' "). We also conclude that the purchases of 1 and 9 East Street, and the three large warehouses located on those properties, were in size and scope of a very different dimension than that contemplated by the additional property provisions in the partnership agreement and were therefore not "directed" by the single purpose, limited partnership agreement. Twenty-three East Street represented, for example, only twelve percent of the square footage of the combined properties. The other large properties were not necessary, incidental, or convenient to the 23 East Street project, as those words are commonly understood. Rather they were significant, independent purchases.

Occasional references in the trial record to the easements held by 23 East Street for access over 1 and 9 East Street also do not support the plaintiffs' contention, asserted at oral argument, that those easements supplied the "silver bullet" that rendered acquisition of 1 and 9 East Streets necessary, convenient, or incidental to the limited partnership. Those easements, which provided 23 East Street with access between the building and East Street, ran in favor of 23 East Street. The plaintiffs point to nothing in the record or the law to indicate that the acquisition of properties that were burdened by those easements would further the limited partnership's purpose.[11]

As to parking, the judge found that 23 East Street began leasing parking spaces from adjacent properties in 1999, at market prices, only after a disgruntled commercial neighbor constructed

---

[11]The plaintiffs also asserted in their brief that 9 East Street had an access easement that burdened 1 and 23 East Street. We cannot confirm that from the record on appeal, but again, the significance of the access easements to the purpose of the limited partnership was not established at trial; it rather appears to be an afterthought.

a fence that curtailed access to parking that had been previously used by 23 East Street for many decades. Again, the occasional leasing of parking spaces from adjacent properties did not render the acquisition of the entire 1 and 9 East Street parcels necessary, convenient, or incidental to the 23 East Street project.

Accordingly, the general partners committed a breach neither of their fiduciary duty nor of the partnership agreement when they acquired the properties at 1 and 9 East Street without disclosing the purchases or offering the limited partners the opportunity to participate in the investments. As such, judgment was properly entered for the defendants on the plaintiffs' claims for misappropriation of partnership opportunity and for breach of contract stemming from the acquisition of those properties.

2. *Related-party transactions.* The plaintiffs claimed that the general partners wrongly made payments to themselves and to their affiliated entities for services that should have been disclosed to the limited partners in advance, as § 12.5 of the partnership agreement required. The services themselves were expressly authorized by § 12.5. As to the lack of advance notice, the judge found that no harm was shown to have resulted from the omission. Her finding was based on the overwhelming evidence that the compensation paid to the defendants and their related entities was fair and reasonable.[12]

The plaintiffs additionally complain that the judge improperly placed the burden of proving the unreasonableness of the fees on them, rather than on the defendants. See, e.g., *Starr* v. *Fordham*, 420 Mass. at 183 (where judge concluded that partner had engaged in self-dealing, it was partner's "burden to prove the fairness of his actions and to prove that his actions did not result in harm to the partnership"). The judge expressly found, however, that the defendants' activities giving rise to related-party transactions "were reasonable, and within the ordinary management of

---

[12]The plaintiffs argue in a very general way that they were harmed by the defendants' failure to disclose the related-party agreements in advance, even if the fees were reasonable, and that they were also harmed by the defendants' failure to provide them with other financial information as the partnership agreement required. The plaintiffs' brief on the point does not rise to the level of acceptable appellate argument, as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and we do not reach it. See *Stark* v. *Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 236 (2000).

commercial real estate," and that the defendants offered evidence "that established that all fees and commissions paid to them or affiliates were well within market rates." The judge therefore concluded that "[e]ven if the burden fell on the defendants to show the fees were reasonable, *Starr* v. *Fordham*, 420 Mass. [at] 183 . . . , they amply met that burden." Finally, the judge properly found that the evidence submitted at trial by the defendants fully supported the valuation of 23 East Street, and the plaintiffs failed to introduce any material evidence to the contrary.[13]

The defendants have requested attorney's fees and costs on appeal pursuant to Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979). Within fourteen days of the date of rescript, they shall submit to this court a petition for fees and costs, together with supporting materials, as described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). The plaintiffs shall have fourteen days thereafter to respond.

*Judgment affirmed.*

---

[13]As we affirm the judgment against the plaintiffs on all counts, we need not reach the issue whether the plaintiffs' claims should have been brought derivatively.