RUSSELL S. KNAPP[1] & others[2] *vs.* NEPTUNE TOWERS
ASSOCIATES & others.[3]

No. 07-P-1744.

Suffolk. June 3, 2008. - September 2, 2008.

Present: GRASSO, SMITH, & TRAINOR, JJ.

*Partnership,* Limited partnership, General partner, Fiduciary duty.

In a civil action against a limited partnership's general partners and its at-
torney alleging breach of fiduciary duty arising from the sale of the
partnership's sole asset, a transaction in which the attorney served as real
estate broker, the judge properly granted summary judgment in favor of the
limited partnership and its general partners, where the partnership agree-
ment specifically permitted a party to the partnership agreement (such as
the attorney) to have an interest in or to be the broker in such a transac-
tion, and did not require the general partners to disclose to the limited
partners that the attorney was operating as a broker; and where the general
partners made no misleading or ambiguous statements about the broker
[506-509]; similarly, the judge properly granted summary judgment in
favor of the attorney, where there was no showing that the attorney com-
mitted a breach of his fiduciary duty to each partner, in that the partnership
agreement expressly permitted the actions he took and there was no indica-
tion that his compensation was unreasonable or not in accord with sound
business practices [509]

The judge in a civil action properly dismissed counterclaims alleging abuse of
process, defamation, and civil conspiracy, where the counterclaims arose
solely from the filing of the civil action, which was a proper use of the
courts, wherein statements made were absolutely privileged. [509]

CIVIL ACTION commenced in the Superior Court Department on
September 23, 2004.

[1] Individually and derivatively, as a limited partner of Neptune Towers
Associates.

[2] Christopher Brody, Greg Brody, the trustees of the Emil Buehler Perpetual
Trust, Peter Cohen, Ronald L. Cohen, and Stephen A. Lieber, all limited
partners of Neptune Tower Associates.

[3] Irene M. Bailey, Ricci A. LaCentra, Loretta C. LaCentra, Phyllis Kerr, Roy
Cheever, and William E. Bailey. Irene M. LaCentra, a named defendant, is
deceased.

The case was heard by *Allan van Gestel*, J., on motions for summary judgment.

*Joseph F. Hardcastle* for the plaintiffs.

*Joseph J. Balliro, Jr.*, for the defendants.

SMITH, J. In September, 2003, the plaintiffs, class A limited partners of Neptune Towers Associates (Neptune), filed an action in the Superior Court alleging four counts of breach of fiduciary duty against Neptune's general partners (general partners) and its attorney, William Bailey. The defendants answered and filed a counterclaim in January, 2005, alleging abuse of process, civil conspiracy, and defamation.

In July, 2006, the parties filed cross motions for summary judgment, agreeing that there were no material facts in dispute. A Superior Court judge issued a decision on August 2, 2007, dismissing the complaint and all counterclaims. The plaintiffs appeal from the Superior Court judge's determination that the general partners did not violate a duty to disclose; the defendants cross-appeal from the order dismissing their claims.

*Facts.* The undisputed facts are as follows. Neptune is a limited partnership that was formed in 1971 for the purpose of developing, owning, and managing the subject property, Neptune Towers Apartments (Neptune Apartments) in the city of Lynn. Pursuant to the partnership agreement, the partnership is managed by six general partners: Irene Bailey; her brother, Ricci LaCentra; his wife, Loretta LaCentra; Phyllis Kerr and Roy Cheever, long-time employees of the family business; and Irene Bailey's mother, the late Irene LaCentra. Irene Bailey and Ricci LaCentra are the two "Managing General Partners" of Neptune. William Bailey (Bailey), Irene Bailey's husband, is Neptune's attorney.

The general partners hold a 60.5% capital ownership and profit sharing interest in Neptune. The remaining partnership shares are held by the limited partners, with the plaintiffs, the class A limited partners, holding 29.6875% of the partnership shares.[4]

The partnership agreement provides that the limited partners have no right to participate in the management of the partner-

---

[4] The class B limited partners are not involved in this action.

ship and further permits the general partners to hire, at their "sole discretion," "brokers, agents or attorneys as the General Partners may determine (notwithstanding that any parties to this Agreement may have an interest in, or be one of, such brokers, agents or attorneys)." The agreement also explicitly permits the employment by Neptune of general partners or members of their families and obligates Neptune to reasonably compensate the partner or family members "in accordance with sound business practices."[5] However, two-thirds of the limited partners must approve any sale of partnership property.

In May, 1999, Neptune and Bailey entered into a real estate brokerage agreement for the sale of Neptune's only asset, the apartment buildings. The agreement, signed on behalf of Neptune by Irene Bailey, Irene LaCentra, and Loretta LaCentra, authorized Bailey to find a buyer for the property, specified a price of $20 million, and set forth a six percent broker commission on the sale of the property. A few months later, in August, 1999, Neptune entered into a written agreement with Timothy Aluise, agreeing to compensate Aluise "like a broker" with a two percent commission if he found a buyer for the property. Aluise's commission would be paid from Bailey's commission.

In May, 2000, Community Development Trust (CDT) was identified as a likely buyer of the Neptune Apartments. Bailey sent a letter to Irene Bailey and Ricci LaCentra concerning issues raised by the potential sale, including the general partners' fiduciary obligation to inform the limited partners about CDT's interest. In his letter, Bailey asked what should "be in [the] letter" to the limited partners about the proposed sale. He also reiterated that the general partners required approval from two-thirds of the limited partners in order for the sale to proceed.

By July, 2000, it was nearly certain that CDT would buy the Neptune Apartments. On July 12, 2000, Bailey sent a letter to

---

[5]Section 6.9 of the partnership agreement provides, in pertinent part:

"The General Partners may . . . enter into such agreements, contracts or the like with any Affiliated Person [defined as a general partner, limited partner, member of the immediate family of a general or limited partner, etc.] . . . and the General Partners may obligate the Partnership to pay for and on account of any such services reasonable compensation therefor, determined in accordance with sound business practices."

the limited partners informing them that Neptune was preparing to sell the property. He identified members of the team working on the sale as accountant Joseph Stanton, attorney Jerrold Olanoff, and Aluise. He noted that Aluise "has introduced us to three prospective buyers" and that "[t]wo of these parties have expressed strong interest in buying the property." Bailey did not describe his role as a broker and signed the letter as "Counsel to Neptune Tower Associates."

Subsequently, Bailey sent the limited partners a form letter on September 26, 2000, announcing that the general partners had decided to sell the Neptune Apartments to CDT. The letter stated that it was "imperative" that each partner sign and return an enclosed authorization form. This letter did not disclose Bailey's interest as a broker in the transaction; however, he offered to answer any questions or comments.[6]

By the end of October, 2000, two-thirds of the limited partners had authorized the sale. On October 31, 2000, Bailey informed the limited partners that a majority of the partners had authorized the managing general partners to proceed with the sale to CDT. He again signed the letter as "Counsel to Neptune Tower Associates." Subsequently, Bailey and Aluise negotiated Aluise's commission down from two percent of the sale price to a flat fee of $40,000.

CDT bought the Neptune Apartments in March, 2002, for $13.2 million.[7] Neptune paid Bailey a $796,327.74 broker's fee. Bailey then paid Ricci LaCentra a $398,163.87 "consultant fee," one-half of his broker's fee. Although one draft of Neptune's closing statement specifically identified a broker's fee paid to Bailey, the closing statement received by the limited partners contained a single entry for "brokerage, consultants, legal & accounting fees" in the amount of $950,828.

It was not until an October, 2002, letter, after two limited partners requested a breakdown of the brokerage fee line item, that Bailey was identified as the broker. The letter also identified payments of $8,280 to an accountant, $78,720 to Jerrold

---

[6]Although Bailey had subsequent telephone conversations with two limited partners, he did not disclose to them his role as a broker in the transaction.

[7]Approximately half that amount was available for distribution to the general and limited partners after payment of the mortgage and other expenses.

Olanoff as counsel for Neptune, and a "Finder's fee" of $40,000 to Aluise. Bailey was also paid $173,936.20 for separately billed legal services in connection with the sale. It was undisputed that the plaintiffs would not have consented to the sale if they had known that Bailey was to receive a $796,000 broker's fee.

Although some distributions of the proceeds of the sale had already been made to the limited partners, the general partners refused to make further distributions unless the limited partners signed a release of all claims against the general partners. The plaintiffs refused, and this litigation ensued.

The plaintiffs contend that William Bailey and Neptune's general partners violated fiduciary duties owed to them by failing to disclose, prior to the closing of the real estate sale, that a substantial portion of the sale proceeds "would be diverted" to LaCentra family members through payments to Bailey.[8] The general partners and Bailey alleged counterclaims for abuse of process, defamation, and civil conspiracy against the limited partners.

On cross motions for summary judgment, the motion judge determined that the general partners, when selling the real estate, had unfettered authority to engage a real estate broker, even one who was a member of a general partner's family, because such actions were authorized by the partnership agreement. Addressing the defendants' counterclaims, the motion judge ruled that there was no basis for the abuse of process, civil conspiracy, or defamation claims. The parties now bring cross appeals.

*Discussion.* The plaintiffs argue that the motion judge erred in his application of settled law concerning a claim of breach of fiduciary duty to the undisputed facts. We review the motion judge's legal conclusions de novo. *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003).

The plaintiffs claim that the general partners committed a breach of a fiduciary duty owed to the plaintiffs by failing to disclose that Bailey was acting as the real estate broker for the sale of the property and by failing to disclose the details of his brokerage agreement.

---

[8]The plaintiffs also argued below that the defendants violated their fiduciary duty by refusing to make distributions from the asset sale, unless the limited partners released all claims against the general partners and "immediate family members." However, they failed to argue this issue in their brief.

According to the Restatement (Second) of Torts, the tort of nondisclosure arises in a limited number of circumstances where there is a duty to disclose. *Wolf* v. *Prudential-Bache Sec. Inc.*, 41 Mass. App. Ct. 474, 476-477 (1996), citing Restatement (Second) of Torts § 551 (1977). A duty to disclose exists where "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction." *Stolzoff* v. *Waste Sys. Intl., Inc.*, 58 Mass. App. Ct. 747, 763 (2003).

Here, the general partners owed a fiduciary duty to the limited partners as a result of the partnership relationship. *Reeve* v. *Folly Hill Ltd. Partnership*, 36 Mass. App. Ct. 90, 95-96 (1994) (general partners owe limited partners duty of utmost good faith and loyalty similar to general partners or stockholders in close corporation). Where, however, the rights of the limited partners arose out of a contract, "the obligations of the parties are determined by reference to contract law, and not by the fiduciary principles that would otherwise govern." *Chokel* v. *Genzyme Corp.*, 449 Mass. 272, 278 (2007). See *Fronk* v. *Fowler*, 71 Mass. App. Ct. 502, 507 (2008) (limited partners' claim for breach of fiduciary duty against general partners for self-dealing and misappropriation of partnership opportunities failed because partnership agreement explicitly permitted conduct complained of). In this case, the procedure for hiring a broker and selling the partnership property falls squarely within the contract, and the duties the general partners owed the limited partners are circumscribed by the terms in the partnership agreement. *Ibid.* Therefore, the question becomes whether, in light of the provisions of the partnership agreement, the general partners violated their duty of reasonable disclosure to the limited partners.

The partnership agreement provided the general partners the sole, unfettered right to retain a real estate broker and specifically permitted a party to the partnership agreement to have an interest in or be the broker. The agreement further explicitly permitted the general partners to enter into reasonable contracts with family members. Therefore, under the partnership agreement it was permissible for Bailey to act as the broker for the partnership.

The general partners were not required to disclose that Bailey was operating as a broker because his capacity as a broker could not be material to the limited partners' decision to approve or disapprove of the transaction given the explicit language in the partnership agreement permitting the hiring of a relative of a general partner to perform services for the partnership.[9] See *Shelley* v. *Smith,* 271 Mass. 106, 115 (1930) (partner has duty "to disclose to the others any material facts relating to transactions connected with partnership interests"). The existence of a broker, and not the broker's identity, was fundamental to the transaction. The limited partners knew that a broker was required to complete the transaction, and they do not claim that the six percent fee was unreasonable.[10] Compare *Fronk* v. *Fowler,* 71 Mass. App. Ct. at 511 (even where partnership agreement required disclosure for self-dealing transactions, no harm resulted from nondisclosure where evidence showed compensation was fair and reasonable).

The general partners also did not make any misleading or ambiguous statements about the broker. As the motion judge noted, there were no statements at all by the general partners about who would be the broker, what he or she might do, or what any com-

---

[9] Notwithstanding the limited partners' undisputed assertion that they would have rejected the sale if they had known Bailey was the broker, such a position would have been untenable. Courts interpret partnership agreements in accordance with general contract principles. *JRY Corp.* v. *LeRoux,* 18 Mass. App. Ct. 153, 159 (1984). The implied covenant of good faith and fair dealing requires "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. 451, 471-472 (1991), quoting from *Drucker* v. *Roland Wm. Jutras Assocs.,* 370 Mass. 383, 385 (1976). The limited partners could not have properly withheld approval of the sale due to the selection of Bailey as an agent where the partnership agreement specifically permitted such an action.

[10] The limited partners offered no evidence that the six percent fee was excessive, whereas the general partners offered an affidavit from an expert in the real estate field stating that a six percent commission was customary in the industry.

In the same vein, the limited partners have not demonstrated that they suffered damages due to the nondisclosure. Whether Bailey or an unrelated individual was the broker, the funds from the sale would have been reduced by six percent to cover the broker's services. Similarly, the limited partners presented no evidence that another broker could have obtained a higher sale price for the property.

mission might be. Contrast *Stolzoff* v. *Waste Sys. Intl. Inc.*, 58 Mass. App. Ct. at 763 (finding duty to disclose after specific inquiry about fact material to plaintiffs' decision to buy a defendant's stock). The existence of a broker was reasonably disclosed; the limited partners, with years of experience in sophisticated real estate transactions, should have inquired of the general partners, or Bailey himself, if they were interested in more specific information. Therefore, the direct and derivative claims against the general partners must fail as a matter of law.

Similarly, the limited partners' claims against Bailey for breach of fiduciary duty must fail. While an attorney for a partnership may owe a fiduciary duty to each partner, see *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 405 Mass. 506, 513 (1989); *Cacciola* v. *Nellhaus*, 49 Mass. App. Ct. 746, 750 (2000), there has been no showing of a breach of such duty where the partnership agreement expressly permitted the actions taken here, and where there was no showing in the summary judgment record that Bailey's compensation was unreasonable or not in accord with sound business practices, as required by the partnership agreement. See note 10, *supra.*

Finally, we affirm the dismissal of the defendant's abuse of process, defamation, and civil conspiracy counterclaims for the same reasons stated by the Superior Court judge, in essence that the claims arose solely from the filing of this action, which was a proper use of the courts, see *Ladd* v. *Polidoro*, 424 Mass. 196, 198 (1997), wherein statements made are absolutely privileged. *Correllas* v. *Viveiros*, 410 Mass. 314, 319 (1991).

*Judgment affirmed.*