Fabricant, Judith, J.
INTRODUCTION
This action arises from the re-purchase of the plaintiffs stock after his termination from his position as chairman and chief executive officer of Flight Options, LLC (Flight Options). Among the multiple claims against multiple defendants asserted in his complaint is a claim of breach of fiduciary duly against the six individual members of the company’s board of managers. Five of those individuals now move to dismiss that claim. For the reasons that will be explained, the motions will be allowed.
BACKGROUND
The facts relevant to the instant motion, taken from the Third Amended Complaint, are as follows. At all material times, Raytheon Travel Air Company (RTA) was a wholly owned subsidiary of Raytheon Aircraft Holdings, Inc, itself a wholly owned subsidiary of Raytheon Company (Raytheon). RTA was the majority shareholder of Flight Options; individual defendants Louise Francesconi, Charles E. Franklin, Kathryn Gilchrist Simpson, William Lynn (collectively, the RTA defendants) represented RTA’s interests on the Board of Managers of Flight Options (board). Robert Pinkas (Pinkas), and Travis Metz (Metz), the other members of the board, represented the interests of two minority shareholders, Brantley Capital Corp. and Monitor Clippers Partners, respectively.
The plaintiff, John P. Nahill, had been an officer of Raytheon for some three years before he was assigned in 2002 to work at Flight Options, first as its finance executive and then as its president. In February 2003, Nahill became Flight Options’ chairman of the board and chief executive officer. In connection with his assigned employment at Flight Options, Nahill and Flight Options entered into an employment agreement, titled the Restricted Unit Award Agreement (Award Agreement or Agreement), dated January 30, 2004. Pursuant to that agreement, as partial compensation Flight Options issued Nahill 6,579,706 common units of stock in the company, representing slightly less than 6% of the outstanding shares.
The Award Agreement granted Flight Options the right to purchase Nahill’s vested shares, within one year, in the event that he was terminated without cause. The Agreement provided that the board would set the purchase price, in good faith, based on the liquidation value of the company. In case of disagreement about the price, the agreement provided for an appraisal process: Nahill would have five days to file a timely objection. Each party would then appoint a nationally recognized appraisal firm, and then the two firms would agree upon and appoint a third independent nationally recognized appraiser. The independent appraiser would, within thirty days, make a determination of value “which shall be final and binding on the parties.” Flight Options would bear the costs and expenses of the independent appraiser unless the initial price it set was at least 90% of the value as determined by the independent appraiser, in which case Nahill would bear those costs and expenses. The agreement made no provision for any information or disclosures to be provided to Nahill before or in connection with his exercise of the right to appraisal.
Flight Options terminated Nahill, without cause, in 2005.[2] On April 4, 2005, the board voted to purchase Nahill’s common units for an aggregate price of $1.00. *321 Nahill timely objected, and Flight Options appointed its appraiser. Nahill responded not by appointing an appraiser, but by requesting that Flight Options provide him with certain information, including annual budgets, operating and strategic plans, and audited financial statements. He asserts that he needed the requested information to inform his decision whether to appoint an appraiser, and that Raytheon had provided much, if not all, of this information to Standard & Poor’s, from which Raytheon had commissioned an assessment of the value of Flight Options common stock. Flight Options did not grant Nahill’s request for information, and the deadline for his appointment of an appraiser passed. The company then sent Nahill a check for $1.00 for his shares.
Nahill brought this action on September 15, 2006, and has amended his complaint three times. His third amended complaint asserts six counts, including three against Raytheon,[3] two against Flight Options,[4] and one against the six individual defendants. The sole count against the individuals, count IV, alleges breach of fiduciary duty with respect to the determination of the purchase price for the stock and the failure to provide the information Nahill sought. It is that count that is the subject of the present motions, filed by the RTA defendants and Metz.[5] For reasons that will be explained, the motions to dismiss will be allowed.
DISCUSSION
To withstand a motion to dismiss, a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement. . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991) (court must take as true allegations of complaint as well as all inferences therefrom).
The defendants argue that Nahill’s claim of breach of fiduciary duty does not state a claim under Delaware law,[6] because their duties to Nahill with respect to the stock purchase were governed solely by the contract. They argue also that the contract precludes recourse to the courts, and that the particular facts alleged would not amount to a breach of fiduciary duly, even aside from the contract. The Court agrees with the first of these contentions, and therefore will not reach the others.
Delaware, like Massachusetts, imposes a fiduciary duty on majority shareholders and directors to minority shareholders. Glassman v. Unocal Exploration Corp., 777 A.2d 242, 247 (Del. 2001); Eisenberg v. Chicago Milwaukee Corp., 537 A.2d. 1051, 1062 (Del.Ch. 1987). That duty extends to conduct affecting rights and obligations that are shared equally by all stockholders. Jebwab v. MGM Grand Hotels, Inc., 509 A.2d 584, 594 (Del.Ch. 1986). Where however, a dispute arises from rights and obligations created by a contract between the corporation and a particular shareholder or class of shareholders, no fiduciary duty extends obligations beyond those provided by contract; in such an instance, the dispute is governed by contract principles, not equitable principles. Id.; Gale v. Bershad, 1998 WL 118022 at *5 (Del.Ch. 1998); Moore Bus. Forms, Inc. v. Cordant Holdings Corp., 1995 WL 662685 at *6 (Del.Ch. 1995).[7]
Where “the duty sought to be enforced arises out of the parties’ contractual, as opposed to their fiduciary, relationship . . . that would preclude any fiduciary duty claim based on the same conduct.” Gale v. Bershad, 1998 WL 118022 at *5. “To allow a fiduciary duty claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essential contractual rights and obligations of [the] shareholders.” Wood v. Baum, 953 A.2d 136, 143 n.23 (Del. 2008), citing Bershad, 1998 WL 118022 at *5 (internal quotations omitted); See also Blue Chip Capital Fund II Limited Partnership v. Tubergen, 906 A.2d 827, 833 (Del.Ch. 2006), citing with approval Madison Realty Partners 7, LLC v. AG ISA, LLC, 2001 WL 406268 at *6 (Del.Ch. 2001) (dismissing partner’s fiduciary claim against general partner where dispute related to obligations expressly treated in partnership agreement), and Gale v. Bershad, 1998 WL 118022 at *5; Solow v. Aspect Resources, LLC, 2004 WL 2994916 at *4 (Del.Ch. 2004) (primacy of contract law over fiduciary law permits court to evaluate parties’ conduct within framework created and crafted by parties themselves).
Nahill argues that the rule established in these cases is limited to claims involving preferred stock. Most of the cases do involve preferred stock, but not all; Madison Realty Partners 7, LLC v. AG ISA, LLC, 2001 WL 406268 at *6 (Del.Ch. 2001), and Solow v. Aspect Resources, LLC, 2004 WL 2994916 at *4 (Del.Ch. 2004), involve partnership agreements. See also In re General Motors Class H Shareholders Litig., 734 A.2d 611, 613 (Del.Ch. 1999) (plaintiffs held common, not preferred stock). The basis of the rule is not the nature of the ownership interest, but the source of the rights in issue. Where the rights arise from a contract that specifically addresses the matter in issue, the Court enforces the contract according to its terms, rather than applying more broadly defined equitable duties.[8]
*322 Here, Nahill’s right to dispute the board’s valuation of his shares arises directly from the Award Agreement, which sets forth the terms and conditions of that right in unambiguous language. The agreement provides that if Nahill makes a timely objection, each party is to appoint an appraiser; these appraisers then appoint an independent appraiser, who determines the value. The Agreement does not grant Nahill the right to demand or receive any information, other than the board’s determination of value, before appointing his appraiser. In entering into the Award Agreement, the parties specifically anticipated and expressly provided for the possibility of a dispute about valuation. The Court’s obligation is to enforce the procedure to which the parties agreed. See Moore, 1995 WL 662685 at *6; Winston v. Mandor, 710 A.2d 835, 845 (Del.Ch. 1997) (where actions are expressly contemplated in contract, duties governed by contract principles).
Nahill also argues that his right to information about the company’s finances derived from his status as a common unit holder, not from the Award Agreement. He does not, however, identify any source of a right in all common unit holders to the particular materials he sought, at the time he sought them. Nor does he explain how, even if common unit holders were entitled to such information on request, the company’s denial of such a request would constitute a breach of fiduciary duty by the individual members of the board. Count IV thus fails to state a claim on which relief may be granted.
CONCLUSION AND ORDER
For the reasons stated, the Defendants Raytheon Air Travel Company, Louise Francesconi, Charles E. Franklin, Kathryn Gilchrist Simpson, and William Lynn’s Motion to Dismiss, and Defendant Travis Metz’s Motion to Dismiss Count IV of the Third Amended Complaint are ALLOWED.

The Third Amended Complaint does not provide a date of the termination.

These are breach of contract (Count I), conversion (Count II), and breach of the covenant of good faith and fair dealing (Count III). Raytheon has answered, and the present motions do not address these counts.

These counts (Counts v. and VI) both allege breach of contract. Count v. alleges failure to determine fair market value in good faith, while count VI alleges breach of the Second Amended and Restated Limited Liability Company Agreement in the failure to provide certain financial information to which Nahill alleges he was entitled as a shareholder. The conduct alleged against the company as a breach of contract in Count VI is substantively the same as the conduct alleged against the individual defendants as a breach of fiduciary duty in Count IV. The present motions do not address these counts.

Pinkas has not filed a motion to dismiss and was not represented at the hearing. The arguments presented by the other individual defendants would appear equally applicable to him.

The parties agree that the case is governed by Delaware law, because the company is organized under Delaware law.

Massachusetts follows the same rule. See Chokel v. Genzyme Corproation, 449 Mass. 272, 278 (2007); (Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 408-09 (1995); Frank v. Fowler, 71 Mass.App.Ct. 502, 507 (2008).

Of the three Massachusetts cases cited in footnote 7, supra, none involved preferred stock.