# United States Court of Appeals
## For the First Circuit

No. 19-1624

TRISTAN SQUERI, individually and on behalf of all others
similarly situated; MADELINE MCCLAIN, individually and on behalf
of all others similarly situated; GEORGE O'DEA, individually and
on behalf of all others similarly situated,

Plaintiffs, Appellants,

v.

MOUNT IDA COLLEGE; THE MOUNT IDA COLLEGE BOARD OF TRUSTEES;
CARMIN C. REISS, individually and as a representative of Mount
Ida College Board of Trustees; BARRY BROWN, individually and as
a representative of Mount Ida College; JEFF CUTTING,
individually and as a representative of Mount Ida College; RON
AKIE, individually and as a representative of Mount Ida College;
JASON POTTS, individually and as a representative of Mount Ida
College,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

Joshua N. Garick, with whom Law Offices of Joshua N. Garick,
P.C., Andra Hutchins, and Kerstein, Coren & Lichtenstein LLP were
on brief, for Tristan Squeri, Madeline McClain, and George O'Dea.
Alice W. Yao and Daniel A. Zibel on brief for the National
Student Legal Defense Network, amicus curiae.

Katherine D. Shea and Pyle Rome Ehrenberg PC on brief for SEIU Local 509 and SEIU Local 888, amici curiae.

Thomas R. Murphy and Law Offices of Thomas R. Murphy, LLC on brief for the Hildreth Institute, amicus curiae.

Jeremy Sternberg, with whom Paul G. Lannon, Jr., John Monaghan, Christopher M. Iaquinto, and Holland & Knight LLP were on brief, for Mount Ida College, the Mount Ida College Board of Trustees, Carmin C. Reiss, Jeff Cutting, and Ron Akie.

Elizabeth E. Olien, with whom Howard M. Cooper and Todd & Weld LLP were on brief, for Barry Brown.

Tamsin R. Kaplan, with whom Emily P. Crowley and Davis, Malm & D'Agostine, P.C. were on brief, for Jason Potts.

Ben Robbins and Martin J. Newhouse on brief for the New England Legal Foundation, amicus curiae.

---

March 25, 2020

---

**LYNCH**, <u>**Circuit Judge**</u>.  In May 2018, Mount Ida College, a higher education institution with its principal place of business in Foxborough, Massachusetts, and its campus in Newton, Massachusetts, permanently closed after six weeks' notice to its students that it was closing.  Mount Ida students in good academic standing were offered admission to UMass Dartmouth to continue their studies.  Some students faced obstacles transferring their credits, finding comparable degree programs, completing their degrees on time, and receiving adequate scholarships and financial aid.  By the time of the notice of closing, the transfer deadlines for many other institutions were imminent or had already passed.

Students Tristan Squeri and George O'Dea, and expected student Madeline McClain, brought a putative class action under Massachusetts law against Mount Ida, its Board of Trustees, and five Mount Ida administrators: President Barry Brown; Chairwoman of the Board of Trustees Carmin Reiss; Vice President, CFO, and Treasurer Jason Potts; Dean of Admissions and Vice President of Enrollment Management Jeff Cutting; and Chief Academic Officer and Provost Ron Akie.

Underlying all the claims were allegations that the defendants knew that Mount Ida was on the brink of insolvency but concealed this information, instead assuring current and prospective students that Mount Ida was financially stable.  The suit brought seven Massachusetts state law claims: breach of

- 3 -

fiduciary duty, violation of privacy, fraud, negligent misrepresentation, fraud in the inducement, breach of contract, and violation of Massachusetts General Laws ch. 93A. The district court granted the defendants' motion to dismiss the complaint. See Squeri v. Mount Ida Coll., No. 18-12438, 2019 WL 2249722, at *6 (D. Mass. May 24, 2019). We affirm.[1]

I.

A. Facts

We recite the facts as alleged in the plaintiffs' complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party. Penate v. Hanchett, 944 F.3d 358, 362 (1st Cir. 2019). On a motion to dismiss, we may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Lydon v. Local 103, Int'l. Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (alteration in original) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)).

Mount Ida was established in 1899, enrolled in 2017 about 1300 students, and granted four-year bachelor's degrees as well as

---

[1] We express appreciation for the amicus briefs from the Hildreth Institute, the National Student Legal Defense Network, SEIU Local 509 and SEIU Local 888, and the New England Legal Foundation.

- 4 -

associate degrees and master's degrees. As early as 2014, Mount Ida was in "financial distress" and "teetering on insolvency." The defendants were aware of Mount Ida's financial position but did not give direct notice of this to current or prospective students.

Mount Ida filed annual audited financial statements with the Massachusetts Attorney General's Office (AGO), as it was required to do by Massachusetts law. See Mass. Gen. Laws ch. 12, § 8F. The financial statements filed with the AGO showed that Mount Ida operated at a deficit of $543,511 in 2014, $6,024,258 in 2015, and $1,488,272 in 2016.[2] Under Massachusetts law, these filings must be publicly available. See id. § 8M ("[A]ll registration statements, annual reports and all other information required to be filed under [§§ 8 to 8M] . . . shall be public records . . . and shall be open to the general public for inspection at such time and under such conditions as the division may prescribe."). These returns are available online from the Massachusetts AGO. The audited return completed in 2017 for the year 2016 was so filed and available online. Federal law also requires nonprofits to file annual returns. See 26 U.S.C. § 6033. Such information must be available for public inspection. See id. § 6104(b); 26 C.F.R. § 301.6104(d)-1.

---

[2] The 2016 operating deficit was reduced due to an $8,114,300, one-time gift made to the school.

- 5 -

In August 2017, Mount Ida submitted an Institutional Self-Study to the New England Association of Schools and Colleges (NEASC), its regional accreditation agency which is recognized by the Department of Education under federal law. See 20 U.S.C. § 1099b. The Self-Study was not provided to students at Mount Ida, but to NEASC. The report evaluated Mount Ida on NEASC's nine standards for accreditation. In the Self-Study, the defendants reported to NEASC that Mount Ida had experienced "significant enrollment, program and aptitude growth," that pursuant to its multi-year financial strategy Mount Ida would generate an operating surplus in 2021, that Mount Ida was in full compliance with its debt obligations, and that it was "confident that it will raise sufficient funds to meet its liquidity needs."

The financial resources section of the document further stated that "[f]rom June 30, 2012 through June 30, 2016, operating revenues have increased from $35.8 million to $41.7 million while operating expenses have increased from $35.3 million to $43.2 million." The report forecasted that Mount Ida would continue to operate at a deficit until 2021, stating that "[b]ecause of many years of deferral of physical maintenance, low enrollment and failure of program expansion, the College's existing economic model does not anticipate a surplus from core operations until FY 2021."

On February 24, 2018, President Brown announced via email a possible merger between Mount Ida and Lasell College to the student body. The email stated that the purpose of the merger "would be to create a more robust learning experience that would take advantage of the distinctiveness of the programs, curricula and experiences of each institution." The email did not mention "that Mount Ida was in financial distress, that it was teetering on insolvency, or that it was seriously contemplating bankruptcy."

On March 23, 2018, President Brown emailed the Mount Ida student body announcing that Mount Ida and Lasell College had "ended discussions on the previously announced exploration of merger." The email further stated that "[o]ver the past six years, Mount Ida has undergone extraordinary growth," and specifically highlighted the increases in Mount Ida's enrollment, scholastic aptitude, and programmatic offerings. The email then stated that "[a]ll these gains have caused the national ratings of the institution to rise to among the top 30 in the North Region as reported in the US News and World Report Rankings." The email did not mention Mount Ida's financial distress.

On April 6, 2018, President Brown again emailed the Mount Ida student body and announced that "Mount Ida College has reached an agreement with the University of Massachusetts . . . under which UMass Amherst will acquire our Newton campus." The email stated that "[w]hile this will mean that Mount Ida will end

its role as an independent college, students in good academic standing will be offered automatic acceptance into UMass Dartmouth."

The announcement occurred without a closing plan having been submitted earlier to the Massachusetts Department of Higher Education (DHE).  See 610 Mass. Code Regs. § 2.07(3)(f)(2) (requiring an institution that "knows that it may close" to submit a closing plan to DHE "as far as possible in advance of the closure" and to "arrange . . . to safeguard the needs of students by organizing educational transfer opportunities, and ensuring the preservation of student records").  In the months leading up to the April 6, 2018, announcement, Mount Ida "had been accepting new students, offering substantial scholarships to new students, and outwardly proceeding as usual to the beginning of a new fall term."

In the days following the announcement of closing, students received individualized information packages about the process for enrolling at UMass Dartmouth.  The personalized packages from UMass Dartmouth contained information about Mount Ida students' majors, estimated credits, transcripts, and financial aid packages.  Mount Ida students had not given prior consent to the defendants to release these records to UMass Dartmouth.

On April 27, 2018,[3] Mount Ida provided written notice of the sale to the AGO pursuant to Massachusetts General Laws ch. 180, § 8A(c), which requires a public charity intending to sell substantially all of its property and assets to give thirty days' notice to the AGO. Mount Ida told the AGO that the transaction with UMass needed to close by May 16, 2018, or it would be unable to meet its financial obligations and would file for bankruptcy.

The AGO responded by letter on May 15, 2018, agreeing to waive the thirty-day prior notice requirement due to the exigency of the circumstances. The AGO noted at the beginning of the letter that the closing was "extremely unfair" to students as well as "disorderly and harmful." The AGO letter then assessed and approved the proposed sale and concluded that Mount Ida would be receiving fair value in the transaction. As part of the transaction, UMass Amherst would receive all of Mount Ida's real, personal, and intellectual property in exchange for UMass Amherst paying off Mount Ida's liabilities and providing Mount Ida with funds to meet its obligations to faculty and staff. UMass Amherst also agreed to continue Mount Ida's veterinary technology program until its students completed the program and to provide other schools with the necessary space and assets to continue the dental

_____

[3] It appears from the Massachusetts AGO's May 15, 2018, letter that the AGO became intensely involved with Mount Ida and its Board of Trustees following the April 6, 2018 announcement.

hygiene, funeral services, interior architecture and design, and fashion design programs.

UMass Dartmouth agreed to offer admission to all Mount Ida students in good academic standing. All four UMass campuses made commitments as part of the transaction: each campus agreed to waive application and deposit fees for Mount Ida students, to commit to ensuring that Mount Ida students understood how many credits would transfer and count toward degree requirements, to accept Mount Ida general education courses toward fulfilling UMass general education requirements, to charge in-state tuition to all Mount Ida students who were citizens or permanent U.S. residents, and to ensure that the financial aid packages of Mount Ida students would not be adversely affected by late applications or enrollments. UMass Amherst agreed to become the "institution of record" for Mount Ida's student records.

On May 16, 2018, Mount Ida and UMass Amherst finalized the sale. Mount Ida officially closed the following day. About 250 Mount Ida students transferred to UMass Dartmouth out of 1389 total students. Other students faced obstacles transferring to new institutions given the short period of notice of Mount Ida's closing. As said, some students faced difficulties finding similar programs, transferring their credits, completing their chosen

degrees on time, and receiving comparable financial aid and scholarships.[4]

B.    Procedural History of the Litigation

The plaintiffs filed this lawsuit in federal district court on November 26, 2018, asserting jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and amended their complaint on January 5, 2019, to assert the seven theories described earlier.  After briefing and oral argument, on May 24, 2019, the district court in a sixteen-page written opinion dismissed the complaint.  See Squeri, 2019 WL 2249722, at *6.

The amended complaint first alleged that the defendants violated the plaintiffs' right to privacy under Massachusetts General Laws ch. 214, § 1B by transferring the plaintiffs' private financial and academic information to UMass Dartmouth without the students' consent.  The district court held that as a matter of law the plaintiffs had failed to allege that the disclosure was

---

[4]    The AGO sent a letter to the Commissioner of the Massachusetts DHE, but showed no copy to Mount Ida, on March 13, 2019.  The letter included findings from the AGO's investigation of Mount Ida and recommendations for the DHE on steps it could take to protect students in the future.  The recommendations included "[i]nforming trustees and officers of nonprofit higher education institutions about their obligations," ensuring institutions prepare necessary contingency plans, ensuring notification to students when the risk of closing is sufficiently imminent, monitoring institutions relying on "nontraditional or extraordinary transactions" to address budget deficits, and increasing the awareness of higher education consultants of the factors placing educational institutions at risk.

unreasonable because Mount Ida transferred the records to facilitate the plaintiffs' enrollment at UMass Dartmouth, which was a "legitimate purpose." Further, the transfer was in accordance with both the AGO's May 15, 2018, letter and Massachusetts regulations, 610 Mass. Code Regs. § 2.07(3)(f)(2).

As to the fraud, negligent misrepresentation, and fraud in the inducement claims, asserted in counts two, three, and four, the amended complaint alleged that the defendants had held Mount Ida out as a "viable institution" despite the fact that they knew or should have known that it was failing financially. The complaint cited the facts that up until Mount Ida's closing, the college accepted new students, sought enrollment deposits for the fall 2018 entering class, advertised and awarded substantial scholarships, scheduled admitted student days, omitted information about the Lasell merger from the 2017 Self-Study report, and failed to inform the DHE of its financial distress. The complaint also stated that the statement in the March 23, 2018, email about the rating of Mount Ida by US News and World Reports was a misrepresentation. The plaintiffs alleged that they relied to their detriment on these representations.

The district court concluded that these claims also failed as a matter of law because the plaintiffs had not identified "any statement that can be shown to have actually been false" and failed to make out a claim of fraud by omission because Mount Ida's

- 12 -

audited financial information was publicly available. Even assuming the defendants had concealed material information, the court held the plaintiffs failed to allege that the defendants had an actionable duty to disclose such information as needed to support these tort claims.

As for the claim of breach of fiduciary duty, the amended complaint alleged that the defendants "held a unique position of influence and trust with [the] students" and so owed the students a fiduciary duty and were in breach of this duty by "[f]ailing to apprise the [plaintiffs] in a timely manner of the financial viability of Mount Ida, . . . [e]ngaging in the sale of the Newton campus without first providing for the needs of the students, . . . [d]ivulging, without authorization, [their] sensitive and private financial and academic information, . . . [r]ejecting a merger deal with Lasell College[,] . . . and [p]lacing Mount Ida's needs ahead of the needs of the [plaintiffs]."

The district court held that this claim failed as a matter of law because "Massachusetts courts have consistently held that no fiduciary relationship exists between a student and his or her college." Any fiduciary duty owed by the defendants, the district court reasoned, "was owed to Mount Ida as a corporate entity."

On the breach of contract claim, the amended complaint alleged that the plaintiffs had formed a contract with Mount Ida

(without specifying how) and that the plaintiffs "fulfilled their contractual obligations to Mount Ida by remitting tuition payments . . . for the purpose of receiving a degree in their selected field." The amended complaint asserted that the defendants "breached their contractual duty by failing to provide the education bargained for and paid for by the [p]laintiffs."

The district court concluded that these "bare allegations [did] not suffice for a breach of contract claim" because the complaint failed to identify the terms of the "contract, when it was formed, and who negotiated it." Further, the amended complaint failed to plausibly allege an implied contract.

Finally, the amended complaint alleged that the defendants violated Massachusetts General Laws ch. 93A, § 9, alleging that the defendants were engaged in "trade [or] commerce" as required for a ch. 93A claim because: (1) Mount Ida competed with other schools for the enrollment of students by offering scholarships, advertising the school, holding admitted student days, and selling promotional merchandise; (2) it offered for sale a unique product to students; and (3) it received a financial benefit from students.

The district court concluded that this claim failed because the defendants were not engaged in "trade or commerce." Rather, the actions they took were in furtherance of, or at least

- 14 -

incidental to, Mount Ida's core educational mission and so, under state law, ch. 93A did not apply.

## II.

"We review the grant of a motion to dismiss de novo." See Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc., 920 F.3d 111, 114 (1st Cir. 2019). To overcome a motion to dismiss, the plaintiffs' complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)). We apply Massachusetts substantive law. Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012).

## III.

We dispose of the preliminary issues first, before turning to the merits of the state law claims.

The district court did not err in referring to public records or documents referenced in the complaint, including the Massachusetts AGO May 15, 2018, letter, Mount Ida's financial

statements, and other NEASC reports.[5]  The court may consider "official public records . . . [and] documents sufficiently referred to in the complaint."  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

The amended complaint specifically referenced the August 2017 Self-Study report submitted to NEASC multiple times and cited it in support of the fraud and misrepresentation claims.  Further, both the Massachusetts AGO's May 15 and March 13 letters, as well as Mount Ida's publicly filed audited financial documents required by state law, constitute public records.[6]  The two letters were written by the AGO itself while the financial documents were audited and submitted to the AGO pursuant to a statutory duty and made available to the public.

Likewise, the plaintiffs argue that there are material disputes of fact as to at least some claims which survive dismissal.  Not so.  The district court correctly applied Iqbal's plausibility standard and took the facts as pleaded by the

---

[5]  The plaintiffs are incorrect in contending that the district court applied the wrong rule.  The district court expressly stated that "[d]espite plaintiffs' objection, the court may consider [the AGO] letter, along with Mount Ida's financial statements and the NEASC reports, because they are public records or are referenced in the Amended Complaint."

[6]  We need not decide if NEASC reports are "public records" because we reach the same conclusion without considering the NEASC reports that were not referenced in the complaint.

- 16 -

plaintiffs and found no claims were stated as a matter of law.  We add that we see no disputes as to any material facts.

IV.

A.   The Breach of Fiduciary Duty Claim Fails

The plaintiffs' primary argument on appeal is that both the individual defendants and Mount Ida itself owed current and prospective Mount Ida students a fiduciary duty.  They argue the district court erred by ending its duty analysis after concluding that the relationship between student and college does not give rise to a fiduciary duty to students as a matter of law.  They assert that since the "[s]tudents pled that the relationship between the parties was founded on faith, trust and confidence," those allegations alone give rise to a fiduciary duty claim.  The argument is based on a misunderstanding of Massachusetts law.  They further argue that "this Court should hold as a matter of law that colleges and universities owe a fiduciary duty to [their] students."

Massachusetts law firmly establishes that there is no such fiduciary duty between Mount Ida's officers or trustees and Mount Ida students on the claims here.  See Morris v. Brandeis Univ., 804 N.E.2d 961, 961 (Mass. App. Ct. 2004) (unpublished) (tbl.) (concluding that "[t]here was no fiduciary relationship between a student and a university administrator/advisor" in a case involving suspension of a student for plagiarism).  Indeed,

the fiduciary duty on the individual defendants is imposed by statute, Mass. Gen. Laws ch. 180, § 6C, and is owed to the college. Common law courts are not free to impose additional and likely conflicting fiduciary duties not imposed by statute. In ch. 180, § 6C, the Massachusetts legislature has imposed a fiduciary duty on directors and officers, but that duty is owed to the institution, here Mount Ida. That duty is to act "in good faith and in a manner [the director or officer] reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position . . . would use under similar circumstances." Id.

The duty is not owed to students. See Estate of Moulton v. Puopolo, 5 N.E.3d 908, 921 (Mass. 2014) ("Directors of a corporation stand in a fiduciary relationship to that corporation and have a duty to protect its interests 'above every other obligation.'" (quoting Am. Disc. Corp. v. Kaitz, 206 N.E.2d 156, 160 (Mass. 1965))). The interests of the students alleged on the facts here are in direct conflict with those of the institution. Early disclosure of financial distress might well have endangered the ability of the institution to recover and made the financial distress even worse. The Massachusetts AGO recognized in its March 13, 2019, letter that "premature notice of financial instability can result in a 'self-fulfilling prophecy.'" Indeed, even the plaintiffs recognize that the trustees ran the risk of students

- 18 -

deciding not to enroll if a gloomy picture of Mount Ida's financials were painted.

Further, Mount Ida itself did not owe a fiduciary duty to the students, and we reject the plaintiffs' assertion that this court should "expand the law" and establish a fiduciary duty between a college and its students. "Federal courts are not free to extend the reach of state law," Doe v. Trs. of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019), at least not where there are Massachusetts law and precedent suggesting the contrary, see Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 9 (1st Cir.), review denied, 885 F.3d 52 (1st Cir. 2018).[7]

The Massachusetts legislature just after these events occurred addressed the issue of how to improve the financial stability of higher education institutions going forward. The legislature decided yet again in the new legislation not to impose the duty that the plaintiffs now advocate should be imposed on the college itself. See An Act to Support Improved Financial Stability in Higher Education, 2019 Mass. Acts ch. 113. Rather, the statute

---

[7] We also deny the plaintiffs' motion to certify this question to the Supreme Judicial Court (SJC). The plaintiffs chose to be in federal court. They did not ask the district court to certify any question. Nor did they develop this request in their appellate briefs. The motion was first made after briefing and shortly before oral argument. In addition, we see no question to certify. Massachusetts law is clear that no fiduciary duty to plaintiffs exists in these circumstances.

- 19 -

mandates that every higher education institution post financial information on its website and "immediately notify the [Massachusetts Board of Higher Education (BHE)[8]] of any known financial liabilities or risks that are reasonably likely to result in the imminent closure of the institution or otherwise negatively affect the institution's ability to fulfill its obligations to current and admitted students." Id.

Massachusetts courts have repeatedly stated that the relationship between an institution of higher education and its students is generally not a fiduciary one. See Williamson v. Bernstein, No. 951471, 1996 WL 1185104, at *3 (Mass. Super. Ct. Feb. 20, 1996) ("The relationship between students and universities is generally contractual rather than fiduciary."); see also Morris, 804 N.E.2d at 961 (stating that plaintiff had failed "to assert any particular facts in this case that would

---

[8]    The old and new laws imposed new duties on the BHE. The new statute requires the BHE to annually assess the finances of such institutions and to determine if an institution "may be at risk of imminent closure." 2019 Mass. Acts ch. 113. Only such a determination by the BHE triggers the obligation of the institution to "prepare a contingency plan for closure, which shall include a process for the institution or the board, or both, as determined by the board, to provide appropriate notification to relevant stakeholders, as determined by the board, including, but not limited to, enrolled students, candidates who have submitted applications, recent graduates, faculty, staff and host communities." Id.

warrant the imposition of a heightened duty upon [his university]").[9]

There is another reason the plaintiff students fail to state a breach of fiduciary duty claim. Whether viewed under the rubric of standing or some related doctrine, Massachusetts law restricts to the AGO the ability to pursue claims of mismanagement of charitable organizations. See Mass. Gen. Laws ch. 12, § 8 ("The attorney general shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof."). The SJC has said:

> The law has provided a suitable officer to represent those entitled to the beneficial interests in a public charity. It has not left it to individuals to assume this duty, or even to the court to select a person for its performance. Nor can it be doubted that such a duty can be more satisfactorily performed by one acting under official responsibility than by individuals, however honorable their character and motives may be.

---

[9] While the SJC has recently recognized duties in the context of particular individuals at colleges who fail to act reasonably to alleviate risk where they have knowledge of a student's high risk of suicide, no such facts are presented here. See Nguyen v. Mass. Inst. of Tech., 96 N.E.3d 128, 142 (Mass. 2018). In Nguyen, the SJC recognized that a college has a special relationship with a student and a corresponding duty to take reasonable measures to prevent suicide in narrow circumstances. Id. Nguyen does not address the presence of a fiduciary duty between a college and its entire student body nor does it say anything about whether this special relationship could "give rise to a fiduciary duty," as the plaintiffs argue.

- 21 -

Weaver v. Wood, 680 N.E.2d 918, 922 (Mass. 1997) (quoting Burbank v. Burbank, 25 N.E. 427, 428 (Mass. 1890)). And there is no plausible argument that the claims advanced here fall within any special standing exception articulated by the Massachusetts Appeals Court in Harvard Climate Justice Coalition v. President and Fellows of Harvard College. 60 N.E.3d 380, 382-83 (Mass. App. Ct. 2016) (concluding that student plaintiffs lacked standing to pursue claims that charitable organization had been mismanaged because they "fail[ed] to show that they [had] been accorded a personal right in the management or administration of [the school's] endowment that is individual to them or distinct from the student body or public at large").[10]

B.   No Claim of Violation of Privacy Was Stated

Next, the plaintiffs argue that the district court erred in dismissing their violation of privacy claim under ch. 214, § 1B. They argue that the issue of whether the records transfer was "reasonable" because it had a "legitimate purpose" is a question of fact that should have gone to a jury. They rely on a distinction between UMass Amherst and UMass Dartmouth and argue that UMass Dartmouth could not have received the records pursuant to a "closing plan" or at the AGO's direction because it received the

---

[10]   We reject any argument that the plaintiffs lack Article III standing. It is clear that the plaintiffs have sufficiently alleged injury to have Article III standing.

- 22 -

records before the AGO coordinated a plan for Mount Ida's closing. Further, UMass Dartmouth was not the eventual successor "institution of record" for Mount Ida; rather, UMass Amherst fulfilled this role. Neither argument has merit.

"To sustain a claim for invasion of privacy [under G.L. c. 214, § 1B], the invasion must be both unreasonable and substantial or serious." Ortiz v. Examworks, Inc., 26 N.E.3d 165, 173 (Mass. 2015) (alteration in original) (quoting Nelson v. Salem State Coll., 845 N.E.2d 338, 348 (Mass. 2006)). While "[g]enerally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact," Polay v. McMahon, 10 N.E.3d 1122, 1126 (Mass. 2014), the SJC has made clear that such claims may be dismissed if they fail to allege an actionable interference with privacy, see Ortiz, 26 N.E.3d at 173.

In Ortiz, the SJC affirmed the dismissal of the plaintiff's § 1B claim against the defendant-physician because another Massachusetts statute had authorized the defendant to perform the medical examination that the plaintiff had claimed violated his privacy. Id. at 173-74. The SJC cited Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 567 N.E.2d 912, 915 (Mass. 1991), for the proposition that an "action [is] not [a] 'serious' or 'substantial' interference with privacy if, among other things, it had a legitimate business purpose." Ortiz, 26

N.E.3d at 173-74.  The SJC concluded that "[b]ecause the examination was authorized under [the statute] the invasions of privacy associated with its taking place were 'justified.'"  Id. at 174 (quoting Schlesinger, 567 N.E.2d at 914-15).

Here, the plaintiffs' own allegations establish there was a legitimate business purpose.  As in Ortiz, the transfer of financial and academic information was "justified" because it was authorized under Massachusetts law.  See 610 Mass. Code Regs. § 2.07(3)(f)(2).  Massachusetts regulations require a closing institution "to safeguard the needs of students by organizing educational transfer opportunities, and ensuring the preservation of student records."  Id.  That purpose did not depend on there being a final closing plan in place.  The transfer's purpose was to enable Mount Ida students to continue their educations at UMass and to preserve their student records.

We also reject the plaintiffs' argument that only UMass Amherst, not UMass Dartmouth, could receive their records.  The University of Massachusetts is a state system with five campuses, and not a set of independent colleges.  See Mass. Gen. Laws ch. 75, § 1 ("There shall be a University of Massachusetts, consisting of campuses to be maintained at Amherst, Boston, Dartmouth, Lowell, and Worcester, which shall continue as a public institution of higher learning . . . .").

C. No Claims Were Stated for Fraud, Negligent Misrepresentation, or Fraud in the Inducement

The plaintiffs challenge the dismissal of their fraud and misrepresentation claims, arguing that the defendants made "false and misleading statements" and committed fraud by omission by failing to disclose Mount Ida's financial distress.[11]

For a claim of fraud, a plaintiff, among other requirements, "must establish that the defendant 'made a false representation of a material fact with knowledge of its falsity.'" Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002) (quoting Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1133 (Mass. 1982)). Negligent misrepresentation does not require that the defendant have "an intent to deceive or actual knowledge that a statement is false;" instead, it only requires that the defendant fail to exercise "reasonable care or competence in obtaining or communicating the information." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 47-48 (Mass. 2009) (quoting Nycal Corp. v. KPMG Peat Marwick LLP., 688 N.E.2d 1368, 1371 (Mass. 1998)).

The plaintiffs have failed to plead any false statement made by any of the defendants. They assert that the March 23, 2018, email announcing the end of the Lasell merger talks was false

---

[11] Like the district court, we do not reach the issue of whether the plaintiffs' fraud claims were subject to and met the requirements of Federal Rule of Civil Procedure 9(b).

because President Brown "announced that Mount Ida would remain a top 30 regional school." But contrary to the plaintiffs' characterization, President Brown's email actually stated that Mount Ida's gains over the past six years in enrollment and programmatic offerings had "caused the national ratings of the institution to rise to among the top 30 in the North Region as reported in the US News and World Report Rankings." This statement was not false. The statement was about a past rating. Additionally, none of the plaintiffs allege they relied on statements made by Brown between the March 23, 2018, email and the closing announcement two weeks later. Further, the plaintiffs point to no other statements by any of the defendants that were allegedly false.

The plaintiffs' argument that their negligent misrepresentation claim does not fail lacks merit. Negligent misrepresentation still requires a false statement by the defendants. Id. at 48.

The plaintiffs have also failed to plausibly allege fraud by omission. The plaintiffs allege that despite "facing imminent failure, the defendants were variably touting the college's viability to current and prospective students." "Fraud by omission requires both concealment of material information and a duty requiring disclosure." Sahin v. Sahin, 758 N.E.2d 132, 138 n.9 (Mass. 2001). Further, "[f]ragmentary information may be as

misleading as active misrepresentation, and half-truths may be as actionable as whole lies."  Kannavos v. Annino, 247 N.E.2d 708, 711-12 (Mass. 1969).

But here there were no half-truths, nor was there a duty to disclose.  The plaintiffs have not identified any statements by the defendants about Mount Ida's financial situation that could be construed as half-truths.  In Mount Ida's audited financial information, the defendants accurately reported that Mount Ida had operated at a deficit in 2014, 2015, and 2016.  Further, President Brown's statement about Mount Ida's ranking was not forward-looking, and only reported a fact about Mount Ida's current standing.[12]

Further, the plaintiffs have failed to plausibly allege that any of the defendants had a duty to disclose this information. They rely on Knapp v. Neptune Tower Associates, 892 N.E.2d 820 (Mass. App. Ct. 2008), which stated that a duty to disclose arises where "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the

---

[12]    Further, the 2017 Self-Study, which was directed at NEASC and was not a statement to students, stated that Mount Ida had been operating at a deficit and would continue to do so until 2021.

- 27 -

transaction."  Id. at 824.  As said, there was no fiduciary duty here.  Further, none of the defendants made a "partial or ambiguous" statement about Mount Ida's finances.  Finally, Mount Ida's financial distress did not go to the essence of the transaction.  Here, the essence of the transaction with the students was that the students would receive a semester of education in exchange for a semester of tuition.  Mount Ida's financial distress did not impact this transaction, as the students did receive a semester of education before the school closed.

D.  No Breach of Contract Claim Was Pleaded

The plaintiffs assert that the district court erred because they plausibly "pled a breach of either the implied or express contractual agreements between the students and the college."[13]

Under Massachusetts law, the elements of a breach of contract claim are that "there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result."  Bulwer v. Mount

_____

[13]  We reject the plaintiffs' assertion that the district court applied the wrong pleading standard by stating that the plaintiffs' contract claim failed for "lack of specificity."  The district court correctly laid out the plausibility standard at the beginning of its decision and was simply stating that the amended complaint failed to allege any specific details about the claim.

Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016). Further, "[i]n the absence of an express agreement, a contract implied in fact may be found to exist from the conduct and relations of the parties." Sullivan v. O'Connor, 961 N.E.2d 143, 153 (Mass. App. Ct. 2012) (quoting LiDonni, Inc. v. Hart, 246 N.E.2d 446, 449 (Mass. 1969)). "[I]t is essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." Tel. Answering Serv. of Bos., Inc. v. New Eng. Tel. & Tel. Co., 267 N.E.2d 918, 919 (Mass. 1971) (quoting Pollock v. New Eng. Tel. & Tel. Co., 194 N.E. 133, 136 (Mass. 1935)).

The plaintiffs' contract pleadings were that they "applied for admission to Mount Ida," they were each accepted, and that "a contract was formed." It does not allege the terms of any such contract or that specific terms required earlier disclosure of the closing. The amended complaint also makes passing reference to enrollment deposits and the fact that students gave up the chance to enroll at other schools by choosing Mount Ida but fails to explain how these actions formed an express or implied contract which obliged Mount Ida to provide earlier notice of its difficulties to its students than it did. We agree that there was insufficient specificity. And there is no dispute that Mount Ida delivered a semester of education before it closed, if those were the terms of any contract. These allegations do not plausibly allege a breach of implied contract, let alone an express contract,

- 29 -

that the college contracted to give earlier notice than it did or that there was a contract for four years of education in exchange for only one semester of tuition.[14]

E.    The Chapter 93A Violation Claim Was Properly Dismissed

        Finally, the plaintiffs argue that the district court erred in concluding that the allegedly deceptive actions the defendants took were in service of Mount Ida's core educational mission and so were not in "trade or commerce," as required by ch. 93A, § 2(a).  They assert that a "factual inquiry" is required to resolve such a claim and that the district court "cannot conduct such a detailed factual inquiry during the . . . motion to dismiss stage."

        Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  It is well established law that while "[a]n entity's 'status as a charitable corporation is not . . . dispositive of the issue whether ch. 93A applies[,]' . . . [i]n most

_____

        [14]    The plaintiffs also assert that the defendants breached the implied duty of good faith and fair dealing.  The plaintiffs' conclusory allegations also fail to state such a claim.  See A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 95 N.E.3d 547, 561 (Mass. 2018) ("Simply put, 'the implied covenant of good faith and fair dealing cannot create rights and duties that are not already present in the contractual relationship.'" (quoting Eigerman v. Putnam Invs., Inc., 877 N.E.2d 1258, 1265 (Mass. 2007))).

circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission." Linkage Corp. v. Trs. of Bos. Univ., 679 N.E.2d 191, 207-09 (Mass. 1997) (quoting Planned Parenthood Fed'n of Am. v. Problem Pregnancy of Worcester, Inc., 498 N.E.2d 1044, 1051 (Mass. 1986)). Such claims may properly be dismissed for failing plausibly to allege that the defendant is engaged in trade or commerce. See Poznik v. Mass. Med. Prof. Ins. Ass'n, 628 N.E.2d 1, 3-4 (Mass. 1994).

Indeed, the Linkage court stressed the broad meaning of the term education, as distinguished from "trade or commerce" in footnote thirty-six:

> We have given broad meaning to the term "education" in order to implement legislative goals and to allow education reasonable freedom to develop, and we have held that vocational and technical teaching and courses constitute education. See, e.g., Assessors of Bos. v. Garland Sch. of Home Making, 6 N.E.2d 374, 386 (Mass. 1937) (instruction in homemaking skills is educational); Mount Hermon Boys' Sch. v. Gill, 13 N.E. 354, 358 (Mass. 1887) (for purposes of statute exempting educational property from taxation, education includes teaching practical skills). As Justice Knowlton phrased the concept of education, "according to one of Webster's definitions," in the Mount Hermon decision, "[t]o educate . . . is to prepare and fit for any calling or business, or for activity and usefulness in life." Id. at 357.

Linkage, 679 N.E.2d at 208 n.36 (alterations in original) (internal quotation marks omitted).

This case does not fall within the exception to the normal rule recognized in Linkage. Linkage was a suit not brought by students at BU complaining about their education, and that fact alone makes Linkage distinguishable. Id. at 195. Rather the suit was brought by a private commercial company that had a contract to run an offsite training program at a conference center with BU, which was alleged to have been wrongfully terminated by BU. Id. at 195-96. The SJC held the jury had adequate evidence to find a breach of contract and that BU had benefitted from transactions done on its behalf by Linkage and could not therefore repudiate the contract. Id. at 202-05. It also upheld the trial judge's conclusion that ch. 93A, § 11 applied because the two parties' transaction was "of a commercial nature" and the parties were acting in a business context and BU was engaged in "trade or commerce" in its operation of the conference center. Id. at 207-08.

The SJC was careful to distinguish the BU facts from situations in which the defendant is, as here, a "statutorily mandated nonprofit" whose actions were "motivated by legislative mandate [and] not [for] business or personal reasons." Id. at 208 (quoting Poznik, 628 N.E.2d at 4). The factors considered by the SJC as to business context are as follows:

> The question whether a transaction occurs in
> a business context must be determined by the
> facts of each case. Begelfer v. Najarian, 409

> N.E.2d 167, 176 (Mass. 1980).  The factors we consider include "the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons."  All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Bos., 620 N.E.2d 778, 779 (Mass. 1993).

Poznik, 628 N.E.2d at 3.  None of these factors permit a finding of business context here.

Certainly, the words "trade" and "commerce" in ch. 93A, § 1(b) do not traditionally mean the provision of education to students at a not-for-profit college.  See Planned Parenthood, 498 N.E.2d at 1052.

The plaintiffs argue that the defendants violated ch. 93A by failing to follow through on the Lasell merger, failing to disclose Mount Ida's financial distress, and by transferring their financial and academic information to UMass Dartmouth.  But what the plaintiffs allege to be actionable were all activities taken in furtherance of Mount Ida's charitable mission of education.[15]  Unlike in Linkage where BU possessed a "business motivation[]" to create a new revenue stream with a business partner, 679 N.E.2d at 209, Mount Ida's allegedly actionable activities involved directly encouraging students to attend Mount

---

[15]  The fact that Mount Ida may sell a small amount of merchandise with the school's name is distinct from the question here of whether statements directly related to attracting students are actionable under ch. 93A.

Ida so that they could receive an education and ensuring that Mount Ida students could continue their educations after Mount Ida's closing.

The plaintiffs' argument that the phrase "advertising . . . of any services" in the text of ch. 93A, § 1(b) means that they state a ch. 93A claim as to services provided by a not-for-profit has been squarely rejected by the SJC. See Planned Parenthood, 498 N.E.2d at 1050-51 (determining that a charitable corporation, which had engaged in advertising of its services, was not engaged in trade or commerce).

It is true that the BHE regulations, 610 Mass. Code Regs. § 2.07(3)(g)(2), state that "[t]he educational institution shall not engage in untrue and misleading advertisements which are otherwise prohibited by [ch. 93A]." But the plaintiffs do not and could not argue this regulation adds to the requirements of ch. 93A as set forth by the legislature and the courts.

And there is even stronger reason to conclude that Massachusetts has not authorized a private right of action under ch. 93A for these types of actions by a nonprofit school. Regulation of not-for-profit colleges as to such matters as timing of notice of closing has been assigned to the Massachusetts BHE. See Mass. Gen. Laws ch. 69, § 30A; see also 610 Mass. Code Regs. §§ 2.01-2.14.

V.

Since our decision disposes of the claims against all of the defendants, including the individual defendants and the Board of Trustees, we do not reach the other defenses that they have raised.[16]

We also reject the plaintiffs' request for leave to amend. The "plaintiffs were put on notice of the deficiencies in the complaint by the motion to dismiss. If they had something relevant to add, they should have moved to add it then." Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc., 778 F.3d 228, 247 (1st Cir. 2015). They failed to do so. Instead, they stated only that they requested leave to amend if the court found their complaint lacking. This was insufficient. See Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008) (concluding that a similar statement "[did] not constitute a motion to amend a complaint" and "the district court cannot be faulted for failing to grant such leave sua sponte").[17]

Affirmed.

---

[16] To the extent that certain defendants argue that they are volunteers serving a not-for-profit organization entitled to the protections of the Volunteer Protection Act, 42 U.S.C. § 14503(a), we note the recent holding by the SJC that the Volunteer Protection Act provides immunity from suit, not merely immunity from liability. Lynch v. Crawford, 135 N.E.3d 1037, 1041 (Mass. 2019).

[17] The defendants' request for sanctions against the plaintiffs is denied.